UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DOMACO SIMS,

       Petitioner,

v.                                                                          Case No. 2:10-cv-139
                                                                            HON. ROBERT HOLMES BELL
BARRY DAVIS,

       Respondent.

_____/


## REPORT AND RECOMMENDATION

       Petitioner Domaco Sims filed this petition for writ of habeas corpus challenging his

convictions for two counts of assault with intent to do great bodily harm. Petitioner was also

convicted of carrying a concealed weapon, felon in possession of a firearm, resisting and obstructing

a police officer, possession of a firearm during the commission of a felony, and third-degree fleeing

and eluding. The respondent has filed an answer and has complied with Rule 5 of the Rules

Governing Section 2254 Cases in the United States District Courts. The parties have briefed the

issues and the matter is now ready for decision.

       The petition asserts:

       I. Petitioner is entitled to a new trial based on newly discovered
evidence where it goes to the heart of his defense: state of mind at the
time of the crimes for which he was convicted; minimally, Petitioner
is entitled to an evidentiary hearing.

       In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA,

this Court must follow the standard of review established in that statute. Pursuant to the AEDPA,

an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the

habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

The Michigan Court of Appeals described Petitioner's assault offenses:

> In this case, both assault offenses occurred while defendant was fleeing from Officer Dustin Blaskie. In December 2005, Officer Blaskie conducted a traffic stop and, at his request, the driver exited the vehicle. At that point, defendant, the only passenger in the vehicle, slid into the driver's seat and quickly drove away. Officer Blaskie got into his patrol car and followed. Defendant eventually jumped out of the vehicle and ran, causing Officer Blaskie to stop his patrol car and pursue defendant on foot. During the foot chase, when the officer was approximately 15 yards behind defendant, defendant turned while running and raised his right hand. Officer Blaskie then heard two or three bangs that sounded like gunshots. In response, the officer dove to the ground near the side of a house seeking cover. The officer threw down a can of mace that he was holding, pulled out his gun, and radioed for backup. Due to the gunfire, Officer Blaskie lost sight of defendant. After calling for back up the officer

continued to search for defendant on foot.  As he came around the corner of the house, defendant was nowhere in sight, so Officer Blaskie headed toward an alley near the garage.  He stopped, peered about, and observed defendant through a gap in a nearby fence.  Defendant was standing behind the fence, facing the officer.  Both men drew guns.  Defendant then fired two or three shots at Officer Blaskie.  The officer fired two shots in return and dove for cover.  The officer radioed another update and continued in pursuit of defendant.

Michigan Court of Appeals' Opinion, docket #19, at 3.

Respondent argues that this claim was procedurally defaulted.  Petitioner alleges that newly discovered evidence found in his medical records indicate that his seizure medication impaired his ability to possess the specific intent of assaulting the officer.  Petitioner was taking Dilantin, 200 mg.  After Petitioner ran from the vehicle on foot, he fired his weapon at the officer who followed in pursuit.  Petitioner claims, as he did in his motion for relief from judgment, that he did not have the specific intent to assault the officer due to the medication he was taking.  The trial court denied the motion for relief from judgment under MCR 6.508(D)(3).  The Michigan appellate courts denied leave to appeal under MCR 6.508(D).  Petitioner now asserts, for the first time, an additional claim of ineffective assistance of trial counsel for failure to discover this evidence.  The trial court, in denying the motion for relief judgment under MCR 6.508(D), specifically cited to MCR 6.508(D)(3) and found that Petitioner failed to show prejudice to overcome his default.  The court stated:

On June 6, 2006, Defendant was transported from the jail to Lakeland Regional Hospital, where he was diagnosed with Dilantin toxicity.  The history reveals that he had been hospitalized for Dilantin toxicity in October 2005.  His assessment reads:

"Dilantin toxicity, rather suspicious for inappropriate usage of the Dilantin given the fact that he had a normal Dilantin level in May of 2006 and has been

- 4 -

incarcerated since December and getting the Dilantic dosed appropriately since that time."

The physical examination discloses:

"The patient is alert and oriented, shackled to the bed at this time, in no acute distress. Earlier, the patient had not spoken to the nurse although the guard said that he had been speaking normally with them prior to the nurse talking with him. He is now speaking to me without difficulty."

The report of Sims's CT scan on June 7, 2006, reads:

"Axial CT scans of the brain were obtained from the skull base to the vertex without the use of intravenous contrast material. The ventricles and sulci appeared within normal limits. There was no evidence of a hemorrhage, a mass, or an extra-axial collection. The cranial vault appeared intact."

Including events revealed in Defendant's trial court file, the timeline of certain pertinent events is as follows:

on May 5, 2006, Defendant's attorney filed a motion for a forensic examination to determine Defendant's mental competency to stand trial

on May 12, 2006, Defendant's motion for a forensic competency examination was granted

on June 7-8, 2006, Defendant was hospitalized for Dilantin toxicity

on June 20, 2006, Defendant was examined by Davis C. Boersma, PhD, a licensed psychologist, for competence to stand trial and also criminal responsibility; Dr. Boersma determined that Defendant was competent to stand trial, and he also determined that Defendant was criminally responsible for his actions for the charged crimes

on August 11, 2006, a hearing was held, with Defendant present, at which, based on Dr. Boersma's

report, I found Defendant mentally competent to stand trial

on August 22, 2006, the jury trial commenced, with the jury's verdict received on August 25.

## MCR 6.508(D)(2)

MCR 6.508(D) sets forth the requirements which Defendant must satisfy before relief may be granted on his 6500 Motion. First, I must determine whether the grounds for which Defendant seeks relief were presented during Defendant's Appeal and decided against him. If so, the requested relief cannot be granted unless there has been a controlling retroactive change in the law. MCR 6.502(D)(2). If not, then, before relief can be granted, I must determine that there is good cause for Defendant's failure to present the grounds in his Appeal and, if so, that Defendant has suffered actual prejudice. MCR 6.508(D)(3)(a) and (b). I may waive the good cause requirement, if I find that there is a significant possibility that Defendant is innocent. MCR 6.508(D)(3).

The limits imposed by MCR 6.508(D) are intentional. *People v Reed*, 449 Mich 375, 388-390; 535 NW2d 496 (1995). The protection against unreliable fact-finding and unjust convictions offered by MCR 6.500 *et seq* is meant to be extraordinary. Review is narrower than that on direct appeal; errors that may warrant reversal on appeal of a conviction may not warrant relief under a 6500 motion. *Reed*, 388.

## Discussion

Defendant's claim raised here, that the results of his June 7-9, 2006, hospitalization is newly discovered, was not raised on appeal.

The results of Defendant's hospitalization before trial have not been newly discovered. It occurred less than 3 months before trial and before his forensic evaluation by Dr. Boersma. At that time, he was represented by an attorney, and certainly the results were well known to Defendant and his attorney. Defendant points to nothing in his extensive medical evaluation during that hospitalization to establish that Defendant was not mentally competent, or not criminally responsible for his actions for these crimes. After his hospitalization, he was given a forensic mental examination, and he was found both criminally responsible and mentally competent.

I find:

> There is nothing to support Defendant's claim that the results of his June 2006 hospitalization is newly discovered evidence.

> Following that hospitalization, in a forensic mental evaluation, Defendant was found competent to stand trial and criminally responsible for his actions.

> Defendant has not established good cause for failing to present this claim in his appeal.

> Defendant is not actually prejudiced.

> There is not a significant possibility that Defendant is innocent.

Berrien Trial Court Opinion, docket #17, 3-5.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003), *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001), *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual

prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

After the trial court denied Petitioner's motion under MCR 6.508(D)(3), the Michigan appellate courts denied leave to appeal affirming the trial court under MCR 6.508(D). Under MCR 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For a claim that could have been raised in a previous appeal, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MCR 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000). Because MCR 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, MCR 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MCR 6.508(D) are unexplained orders within the meaning of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*,(citing *Ylst*, 501 U.S. at 803). As a result, absent an explained decision from some Michigan court applying Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of MCR 6.508(D).

The *Guilmette* case overturns earlier circuit precedent holding that, in cases where the Michigan Supreme Court denies leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," it is sufficiently clear that the supreme court intended to invoke a procedural bar. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004), *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004). In *Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004), the Sixth Circuit had held that where the trial court and the Michigan Court of Appeals have issued a merits determination, an order by the Michigan Supreme Court stating that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," does not constitute a clear and express invocation of the procedural bar. *See Abela*, 380 F.3d at 923. Under *Guilmette*, it is apparent that an appellate form order is merely an affirmance of what was done below, not a presumed procedural default. In this case, the Berrien Trial Court's opinion represents the last reasoned decision and establishes procedural default.

Petitioner has attempted to show cause for his procedural default by asserting attorney error in not discovering the medical evidence and appellate error by not raising this claim on direct

appeal. However, Petitioner received effective assistance of both trial and appellate counsel. Moreover, the judgment of the trial court in denying the motion on this issue was reasonable.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

The undersigned recommends that the court deny Petitioner's application on procedural grounds of default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of Petitioner's claims are properly dismissed due to procedural default. In addition Petitioner's claims

lack merit. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 16, 2013